BRADY, Justice:
This is an appeal from a decree of the Chancery Court of Harrison County, District II, dismissing appellant’s claim against C. & F. Packing House Market, Inc. and giving appellant judgment against Hardy & Company, Inc. in the amount of $4,411.69, plus all costs and interest.
Jac See Packing Company filed suit on an open account against both Hardy & Company, Inc. and C. & F. Packing House Market, Inc. Appellant alleged that C. & F. had assumed the liabilities of Hardy & Company because of the de facto merger of the two companies. C. & F. filed a separate answer embodying a demurrer and denying that any merger or consolidation had occurred. Hardy & Company’s separate answer contained a demurrer, an admission of the correctness of the account
*705 and a claim for set-off in the amount of $835. The claim of set-off was based on $35,000 worth of notes executed by appellant in favor of Hardy & Company payable over a period of ten years. It was alleged that appellant had promised that the notes would be negotiable, that the discount rate on said notes was very high, that although the notes were not due appellant agreed to bear the expense of discount, that Hardy & Company discounted $21,000 worth of notes and that the discount was $835. No testimony regarding this claim of set-off was given at the trial. Jac See filed answers to the affirmative materials in the answers of C. & F. and Hardy & Company. Interrogatories were posed by appellant and answered by C. & F. and Hardy & Company separately.
Jac See Packing Company, Inc., is a Mississippi corporation engaged in the sale of meat products and related items. Hardy & Company, Inc., is a Mississippi corporation which has previously acted as a ship chandler supplying ships in the port of Gulfport, Mississippi. Jac See sold goods to Hardy & Company on account in the sum of $4,411.69, the correctness of which is not contested. A reading of the record shows that in the latter part of 1966 Hardy & Company began experiencing financial difficulties. At that time Hardy & Company and C. & F. considered the possibility of a merger and wrote a letter to approximately thirty-six creditors of Hardy & Company which stated:
[T]he stockholders of C. & F. Packing House Market, Inc. are in favor of this merger provided you, the creditors of Hardy & Company, Inc., will allow us to pay off all the past due accounts in a systematic method instead of trying to pay them all in full now.
The letter also proposed the setting up of a special account to pay the creditors of Hardy & Company. The letter entered in the record was dated December 15, 1966, and Mr. Hardy testified that the letter was mailed at various dates up through March of 1967. Jac See received no letter — the assertion of Mr. Hardy being that Mr. Cru-thirds, the President of Jac See, had already stated that he was not interested in the proposal. Mr. Cruthirds denies that the proposal was ever made to him.
A special account was set up for Hardy & Company out of which between December 7, 1966, and April 3, 1967, $15,601.60 was paid to C. & F. and $9,866.21 was paid to the other creditors of Hardy & Company. Mr. Hardy and Mr. H. L. Franklin, President of C. & F., were co-signees of checks drawn on the account. Mr. Franklin testified that he and his partner loaned Mr. Hardy the money for the special account personally and that he was made a co-signee so that he could control the spending of the money.
In December of 1966 Mr. Hardy went to work for C. & F., and on January 10, 1967, he was elevated to the position of vice president of C. & F. He owns no stock in C. & F. His primary duties at C. & F. consist of servicing ships in the port of Gulport. C. & F. had not, prior to December of 1966, been engaged in ship chandling. Permits were issued C. & F. in January of 1967 for the handling of bonded merchandise, but the charter of incorporation of C. & F. has not been amended to cover this change. Another former employee of Hardy & Company also now works for C. & F.
When Mr. Hardy came to C. & F., he brought his whole inventory to C. & F. where it was stored. Mr. Hardy testified: “I was obligated to C. & F. and I paid some of my obligations with merchandise.” After going to C. & F. Mr. Hardy states that he continued to correspond with creditors and to dispose of bonded merchandise.
When Mr. Hardy came to work at C. & F., he also brought with him two trucks that he had previously used in his business. C. & F., after suit was filed in this cause, bought these trucks from the finance company which never physically repossessed the two trucks. The Hardy & Company *706 signs remained on the truck until they were repainted sometime in April or May of 1967.
C. & F. also has in its possession a calculator which had formerly belonged to Hardy & Company and which C. & F. purchased from SGM Corporation of Syracuse, New York.
Other significant facts are: That on February 3, 1967, Mr. Hardy transferred all his accounts receivable to C. & F., his stated reason being that he owed them money; that the ad of C. & F. in the Gulfport phone directory is almost identical in form to the one used by Hardy & Company; and that the cable address of both Hardy & Company and of C. & F. was given as HIMCO. Mr. Franklin testified that this was an error and that the cable address of C. & F. is CAFO.
Hardy & Company as of the date of the trial, July 27, 1967, had no employees, no business location, no phone number and did not engage in any business for a profit.
The appellant contends, based on the foregoing facts, that the chancellor erred in dismissing appellant’s Bill of Complaint as to C. & F. Packing House Market, Inc., and in failing to render a decree sustaining the allegations of merger, and in failing to hold Hardy & Company, Inc. and C. & F. Packing House Market, Inc. jointly and severally liable. The chancellor rendered a judgment against Hardy & Company, Inc. in the sum of $4,830.63, but dismissed the Bill as to C. & F.
The controlling question presented by this appeal is: Was there a bona fide and colorable attempt to perfect a merger in compliance with the statutory requirements so that a de facto merger was accomplished ?
In Mississippi merger is a legislative creation. Sections 5309-151 to -154 of Mississippi Code 1942 Annotated, as amended (Supp.1966) specifically set forth the essentials necessary to effect a merger of two or more domestic corporations. Among these essentials are the adoption of the terms and conditions of the merger by the board of directors of each corporation by a resolution properly adopted; the manner and basis of converting the shares of stock of the merging corporation into shares or other securities or obligations of the surviving corporation; a statement of any changes in the articles of incorporation of the surviving corporation to be affected by such merger. After the board of directors of each corporation has by resolution approved such plan of merger, written or printed notice shall be given to each shareholder of record entitled to vote at a meeting of stockholders to be called not less than twenty days thereafter. A copy or summary of the plan of merger shall be included in the notice of meeting to be given each stockholder. The plan of merger must be approved by two-thirds of the outstanding shares of each corporation.
Upon approval, articles of merger shall be executed in duplicate by the president or a vice president and by its secretary or an assistant secretary and verified by one of the officers of each corporation who shall sign such articles which shall set forth the plan of merger or consolidation, the number of shares outstanding, and if entitled to vote as a class, the designation and number of outstanding shares of each such class. There are additional requirements as to stock designation. The plan of merger and other statutory requirements when fulfilled are mailed to the Secretary of State who shall first determine if the articles conform to law. He shall then endorse on each of such duplicates the word “Filed” and then file one of the duplicates in his office. He shall then issue a certificate of merger or consolidation which shall be returned to the surviving or new corporation. Within thirty days after the issuance of the certificate, it must be published in the county or counties where each corporation theretofore had its principal office or • place of business in one or more newspapers having a circulation in such county or counties. The evidence offered by the appellant did *707 not disclose compliance by appellee with any of the statutory requirements controlling mergers. The chancellor in his Final Decree stated that the court “is of the opinion and so finds that the complainant has failed in its proof to establish a merger or consolidation in this cause, de facto or otherwise, and that the complainant has failed in its proof to establish a claim against C. & F. Packing House Market, Inc.”
After a detailed study of the briefs of the appellant and the appellee in the case at bar and of the case law in this area and a careful consideration of the oral aguments of counsel, we conclude that the learned chancellor was not manifestly wrong in holding that there was no de facto merger, there having been no bona fide or color-able attempt by appellee to comply with Mississippi Code 1942 Annotated sections 5309-151 to -154, as amended (Supp.1966), which control consolidations and mergers.
For the foregoing reasons the judgment of the lower court is affirmed.
Affirmed.
ETHERIDGE, C. J., and JONES, IN-ZER and SMITH, JJ., concur.